No.: 22-35050

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ENRIQUE JEVONS, as managing member of Jevons Properties,
FREYA BURGSTALLER, as trustee of the Freya K. Burstaller
Revocable Trust, JAY GLENN and KENDRA GLENN,

Plaintiffs-Appellants,

v.

JAY INSLEE, in his official capacity as Governor of the State of
Washington and ROBERT FERGUSON, in his official capacity of the
Attorney General of the State of Washington,

Defendants-Appellees.

Appeal from the District Court from the Eastern District of Washington

**APPELLANTS' RESPONSE TO MOTION TO DISMISS**

STEPHENS & KLINGE LLP
Richard M. Stephens WSBA #21776
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425)-453-6206
stephens@sklegal.pro

## Disclosure Statement

None of the Appellants have a parent corporation or any publicly held corporation that owns 10% or more of its stock.

# Table of Contents

Disclosure Statement…………………………………………………i

Table of Contents……………………………….……..…………...…ii

Table of Authorities……………………………………..……..…………iv

Introduction………………………………………………....1

Statement of Relevant Facts………………………………………...1

   A. The pandemic…………………………………………1

   B. The Governor's proclamations affecting rental property………….2

   C. The Appellants' situations…………………………………...5

      1. Enrique Jevons…………………………………...…5

      2. Freya Burgstaller………………………………………7

      3. Jay and Kendra Glenn…………………………………7

Argument……………………………………………….......8

I. Legal Standard and Burden of Proof…………………………...8

II. Appellants' taking claims are not moot because
   Appellants seek declaratory relief claim that their property
   has already been taken………………………………………...9

   A. Declaratory relief claims may persist even if other
      forms of relief are moot……………………………...…11

   B. Declaratory relief is appropriate to determine whether

a government regulation causes a taking of property.................13

    1. In confusing different forms of equitable relief, the District Court erroneously concluded that declaratory relief was also not available for a Fifth Amendment taking claim simply because injunctive relief was not available. ...............................................................14

    2. The Supreme Court has repeatedly recognized that declaratory relief that a taking did or did not occur is appropriate..............................................................17

III.  Voluntary cessation of the challenged conduct does not moot the case..................................................................18

IV.  The Court should decide this appeal because the issues are capable of repetition and evading review................................23

V.  Appellants' impairment of contracts clause claim is not moot......26

Conclusion...........................................................................27

Certificate of compliance with type-volume limitations in Rule 29(d) and Rule 32(g)(1)....................................................29

Certificate of Service..............................................................30

# Table of Authorities

Page(s)

Cases

*Alaska Ctr. For Env't v. U.S. Forest Serv.*,
189 F.3d 851 (9th Cir. 1999) .............................................................. 32

*Allied Structural Steel Co. v. Spannaus*,
438 U.S. 234 (1978) ............................................................................ 33

*Allstate Ins. Co. v. Herron*,
634 F.3d 1101 (9th Cir. 2011) ........................................................... 14

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) .............................................................................. 25

*Amato v. Elicker*,
534 F. Supp. 3d 196 (D. Conn. 2021) ................................................. 31

*Armstrong v. United States*,
364 U.S. 40 (1960) .............................................................................. 10

*Baptiste v. Kennealy*,
490 F. Supp. 3d 353 (D. Mass. 2020) ........................................... 16, 19

*Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*,
941 F.3d 1195 (9th Cir. 2019) ........................................................... 27

*Big Sandy Rancheria Enterprises v. Bonta*,
1 F.4th 710 (9th Cir. 2021) ................................................................ 17

*Bilbrey by Bilbrey v. Brown*,
738 F.2d 1462 (9th Cir. 1984) ........................................................... 12

*Biodiversity Legal Found. v. Badgley*,
309 F.3d 1166 (9th Cir. 2002) ........................................................... 32

*Bols v. Newsom*,
515 F. Supp. 3d 1120 (S.D. Cal. 2021) .............................................. 29

*Cassell v. Snyders*,
990 F.3d 539 (7th Cir. 2021) ............................................................. 32

*Cedar Point Nursery v. Hassid*,
141 S. Ct. 2063 (2021) ........................................................... 21, 22, 23

*City of Mesquite v. Aladdin's Castle, Inc.*,
455 U.S. 283 (1982) ............................................................................ 25

iv

*Cty. of Butler v. Governor of Pennsylvania*,
  8 F.4th 226 (3d Cir. 2021) ................................................................ 28
*Cty. of Butler v. Wolf*,
  No. 2:20-CV-677, 2020 WL 2769105 (W.D. Pa. May 28, 2020) ........... 16
*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
  438 U.S. 59 (1978) ......................................................................... 23
*E. Enterprises v. Apfel*,
  524 U.S. 498 (1998) ....................................................................... 23
*Elim Romanian Pentecostal Church v. Pritzker*,
  962 F.3d 341 (7th Cir. 2020) ........................................................... 31
*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ................................................................. 24, 25
Governor issued,
  Proclamation 21-09 .......................................................................... 4
*HAPCO v. City of Philadelphia*,
  482 F. Supp. 3d 337 (E.D. Pa. 2020) ................................................ 16
*Hopkins Hawley LLC v. Cuomo*,
  No. 20-CV-10932 (PAC), 2021 WL 1894277 (S.D.N.Y. May 11, 2021) 31
*Idaho v. Coeur d'Alene Tribe of Idaho*,
  521 U.S. 261 (1997) ....................................................................... 17
*In re Thorpe Insulation Co.*,
  677 F.3d 869 (9th Cir. 2012) ............................................................. 8
*Johnson v. Rancho Santiago Cmty. Coll. Dist.*,
  623 F.3d 1011 (9th Cir. 2010) ......................................................... 32
*Jones v. Cuomo*,
  542 F. Supp. 3d 207 (S.D.N.Y. 2021) ............................................... 31
*Knick v. Twp. of Scott, Pennsylvania*,
  139 S. Ct. 2162 (2019) .............................................................. 15, 20
*MetroPCS California, LLC v. Picker*,
  970 F.3d 1106 (9th Cir. 2020) ......................................................... 28
*Pitts v. Terrible Herbst, Inc.*,
  653 F.3d 1081 (9th Cir. 2011) ........................................................... 9
*Roman Cath. Diocese of Brooklyn v. Cuomo*,
  141 S. Ct. 63 (2020) ....................................................................... 26
*Ruckelshaus v. Monsanto Co.*,
  467 U.S. 986 (1984) ....................................................................... 22
*S. Oregon Barter Fair v. Jackson Cty., Oregon*,
  372 F.3d 1128 (9th Cir. 2004) ........................................................... 8

*Skelly Oil Co. v. Phillips Petroleum Co.*,
  339 U.S. 667 (1950) ............................................................................. 12
*Tandon v. Newsom*,
  141 S. Ct. 1294 (2021) ........................................................................ 26
*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
  137 S. Ct. 2012 (2017) ........................................................................ 27
*Trump v. Hawaii*,
  138 S. Ct. 377 (2017) .......................................................................... 27
*Turner v. Rogers*,
  564 U.S. 431 (2011) ............................................................................ 31
*U.S. Tr. Co. of New York v. New Jersey*,
  431 U.S. 1 (1977) ................................................................................ 33
*Ulstein Mar., Ltd. v. United States*,
  833 F.2d 1052 (1st Cir. 1987) ............................................................ 18
*United States v. Sanchez-Gomez*,
  138 S. Ct. 1532 (2018) ........................................................................ 31

Statutes

28 U.S.C. § 2202 ...................................................................................... 10
Engrossed Second Substitute Senate Bill 5160................…......3, 4, 6, 10, 21
Wash. Rev. Code § 43.31.605(1)(d)........................................................ 11

Rules

Fed. R. App. P. 29(d) and 32(a)(7)(B)................................................... 35
Fed. R. App. P. 32(a)(5) ........................................................................ 35
Fed. R. App. P. 32(a)(6) ........................................................................ 35
Fed. R. App. P. 32(a)(7)(B)(iii).............................................................. 35

## Introduction

This appeal arises from a summary judgment order against Appellants' claims that pandemic-related restrictions on eviction and treatment of unpaid rent substantially impairs contractual obligations and cause a taking of property. Appellee, the Attorney General of the State of Washington (hereinafter "State"), seeks to have this appeal dismissed on mootness grounds.

Voluntary cessation of a challenged activity does not moot a case and the issues in this case could easily recur without sufficient duration to enable judicial review. The appeal is also not moot because Appellants await declarations whether their property was taken. If their property was taken, they are entitled to just compensation.

## Statement of Relevant Facts

### A. The pandemic.

The global COVID-19 pandemic has profoundly disrupted and damaged the lives of all Americans and the national economy. While many businesses suffered as a result of the pandemic, the owners of rental property are the only ones who were required by any of the Governor's emergency proclamations to provide a good or service

without charge. Stores and restaurants lost business opportunities due to the pandemic, but they were never required to provide goods or food to customers without an ability to charge for food, clothing, or other necessities. As well-intentioned as they may be, the Governor's rental housing proclamations disparately impacted housing providers who have been left with the responsibility of providing for a public need at their own expense.

### B. The Governor's proclamations affecting rental property.

In response to the pandemic's outbreak, Governor Inslee issued a series of rolling proclamations covering different periods of time which suspended provisions of state law that would otherwise allow eviction of tenants. The proclamations prohibited evictions of tenants for non-payment of rent but lacked any requirement that the tenants were suffering any loss of income that might impact their ability to pay rent. Evictions were prohibited regardless of whether the lease has expired or whether the occupant ever had any lease at all.

Additionally, the proclamations prohibited imposing fees for late payment and a prohibition on treating unpaid rent as an enforceable debt. The latter prohibition would be lifted only if the lessor offered the

tenant, and the tenant refused or failed to comply with, a repayment plan that was reasonable, based on the individual financial, health, and other circumstances of that resident. However, tenants were not required to cooperate with the development of a repayment plan and many tenants chose not to provide information that would enable the creation of a repayment plan—information about the tenant's financial, health and other circumstances that a landlord would have no knowledge about. Appellants were also prohibited from using security deposits to cover unpaid rent when a tenant chooses to leave. Tenants could move on with their security deposit in hand, despite owing rent.

These proclamations were renewed several times over successive time periods. In April of 2021, the Washington legislature enacted Engrossed Second Substitute Senate Bill 5160 (E2SSB 5160). The law ended the Governor's moratorium on evictions, conditioned future evictions upon participation in a dispute resolution program and a rental assistance program. The Governor vetoed two sections that would enable housing providers to request payment from public funds to cover nonpayment of rent during the period of the Governor's proclamations.

3

Despite the legislature's ending of the moratorium, in June of 2021, the Governor issued Proclamation 21-09, also known as the "Bridge Proclamation," supposedly bridging the E2SSB 5160 and the post-E2SSB 5160 worlds. The Governor extended his prohibition on evictions based on unpaid rent until the end of September, 2021 and extended again until the end of October, 2021, unless both of two conditions were met in the local county where the eviction would occur:

1. The tenant had an opportunity to participate in an operational rental assistance program, and

2. The tenant had an opportunity to participate an operational eviction resolution pilot program.

Dkt. 44. Similarly, a landlord could still not treat unpaid rent as an enforceable debt "until such time as the landlord and tenant have been provided with an opportunity to resolve nonpayment of rent through a rental assistance program and an eviction resolution pilot program." https://www.governor.wa.gov/sites/default/files/proclamations/proc_21-09.pdf?utm_medium=email&utm_sourc=govdelivery.

**B. The Appellants' Situations.**

The Appellants are individuals who provide tenants rental housing in Yakima, Washington. While they all have been willing to work with tenants who have suffered economic hardship as a result of the pandemic or otherwise, they have some tenants who they would evict, who they would like to treat their unpaid rent as an enforceable debt and whose security deposits they would have used to cover unpaid rent upon the tenant's choice to end the tenancy. They have not been made whole.

**1. Enrique Jevons.**

Appellant Enrique Jevons is the managing member and owner of Jevons Properties LLC (hereinafter "Jevons") which owns hundreds of residential rental properties rented to tenants in Yakima, Washington. Dkt. 26. The record reflects that Jevons had 171 tenants who were not current with paying their rent and the total unpaid rent was $266,509.98. *Id.*

Previously as one would expect, Jevons would apply a tenant's security deposit when a tenant left to cover any damage to the unit, cleaning costs, and any unpaid rent or late fees. *Id.* at 2-3. That all changed under the first proclamation and Jevons has had tenants leave

5

with rent owing, but he could not and did not use any of those tenants' security deposit to cover unpaid rent or late fees because that is now prohibited. *Id*. The "security" deposits were and are prohibited from being used to provide security for unpaid rent and must be returned to the defaulting tenant. Nothing in E2SSB 5160 changed that.

In connection with the proclamations' key to being able to treat unpaid rent as an enforceable debt, Jevons has not been able to offer tenants a reasonable repayment plan, one that must be based on the individual financial, health, and other circumstances of that tenant as the proclamations require because he did not know—and has no way of knowing—the tenants' financial, health or other circumstances. Dkt. 37-2. It is undisputed that tenants generally do not provide information about their financial or health circumstances or answer questions in the landlord's attempt to gather that information. *Id*.

Making matters worse, Jevons had tenants whose income is too high for them to qualify for rental assistance from the rental assistance programs operating in Yakima County. Dkt. 62-1. Those eight tenants together owed over $48,000 in unpaid rent incurred during the effect of the proclamations. They could not be evicted, and now their debt cannot

be considered an enforceable debt because they have no opportunity to participate in an operational rental assistance program.

### 2. Freya Burgstaller.

Freya Burgstaller owns 12 rental units in Yakima County and has had similar problems. Dkt. 25. Tenants had not been paying rent and one created significant noise problems for other tenants. She tried to evict that tenant but could not because of the proclamations. *Id.*

### 3. Jay and Kendra Glenn.

Concerned about the high cost of housing on lower income tenants, Jay and Kendra Glenn decided to go into the rental housing business and provide homes at lower than market rents. Dkt. 24. They own 46 residential rental properties in Yakima.

At the time of the filing of their motion for summary judgment, the Glenns had 29 rental units where the tenants were delinquent in paying their rent, totaling $99,728. *Id.*, at 2. Their property manager explained:

> It has been the standard in the rental industry that tenants who do owe past rent have little incentive to pay once they have moved out of the rental unit. … It is simply less likely

that people will pay what they owe once they are no longer receiving the benefit of their tenancy.

Dkt. 37-1 The State offered no testimony to rebut this reality. *See also* Dkt. 62-2.

The Glenns also have tenants who have moved out and have no opportunity to resolve nonpayment of rent with a rental assistance program because those programs are designed to keep tenants in their existing tenancies. *Id.* When tenants move out, the State's restrictions leave Appellants "holding the bag."

## Argument

### I.  Legal Standard and Burden of Proof.

The State's motion to dismiss is based entirely on an argument that the issues in this case are moot. Those seeking to dismiss a case on mootness bear the burden of proof. *See S. Oregon Barter Fair v. Jackson Cty., Oregon*, 372 F.3d 1128, 1134 (9th Cir. 2004). And the burden is heavy. *See In re Thorpe Insulation Co.*, 677 F.3d 869 (9th Cir. 2012). As addressed below, this is a burden the State cannot meet.

## II. Appellants' taking claims are not moot because Appellants seek declaratory relief claim that their property has already been taken.

Appellants' appeal is not moot because they have a legally recognized interest in knowing whether they are entitled to just compensation. "A case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome' of the litigation." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011) (citation omitted).

The parties' dispute is live. Appellants contend the proclamations have taken a compensable interest in Appellants' properties for which they are entitled under the Fifth Amendment to just compensation. Appellants contend that the proclamations took leasehold interests, contract rights and interests in security deposits. The latter was taken because Appellants were unable to use required to return to tenants security deposits, even when rent was unpaid. *See Armstrong v. United States*, 364 U.S. 40, 46 (1960) (taking of liens as security interests). The State contends no taking occurred.

Importantly, the State is not arguing that the case is moot because Appellants have been paid. The declaration Appellants seek is valuable

9

to them. If this Court does rule that a taking has occurred, Appellants have no reason to believe that the State will not provide the just compensation the Fifth Amendment requires. Furthermore, 28 U.S.C. § 2202 allows a plaintiff who obtained declaratory relief to seek further relief if that becomes necessary.

The State relies on the new statute, E2SSB 5160, which provides new criteria for eviction of tenants. However, the statute does not provide anything on the repayment of unpaid rent other than describing repayment plans, the failure to comply with only entitles the landlords to evict. It does nothing about unpaid rent. The law amended Wash. Rev. Code § 43.31.605(1)(d) to allow reimbursement of up to $15,000 if nonpaying tenants were of low income or $15,000 for tenancies that remain, regardless of income. This provides nothing because appellants have tenants who have left and who are not low income. *See supra* at 6, 8.

Appellants still have no ruling that a compensable taking has occurred and, therefore, they have a continuing need for such a ruling so they can ultimately obtain compensation from the State. As addressed below, their pursuit of this declaration is not moot.

## A. Declaratory relief claims may persist even if other forms of relief are moot.

Declaratory relief is appropriate to serve useful purposes in resolving legal uncertainties between the parties. *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984). The right to seek declaratory relief regarding parties' legal obligations generally is well-established.

> Prior to [the Declaratory Judgment] Act, a federal court would entertain a suit on a contract only if the plaintiff asked for an immediately enforceable remedy like money damages or an injunction …. The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked.

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950). Here, declaratory relief as to the Fifth Amendment implications of the proclamations is useful because it would clarify and settle the legal relations between the parties as to whether compensation is required.

The taking question is unresolved but could be through this appeal. In addition to eventually recovering compensation, declaratory relief allows Appellants to order their affairs. If they are entitled to compensation, they could arrange for financing in the interim during future eviction moratoria. If the declaration was that there is no taking,

11

Appellants might choose, as did many others, to sell their properties. The entitlement to compensation is not some abstract or merely interesting legal theory. Appellants seek recognition of their Fifth Amendment right to compensation even though no award from the court was yet sought; they still need to know the scope of their rights.

Likewise, the State would be well-served in knowing whether compensation would be required. The State and federal governments have appropriated over a billion dollars for rental assistance (Dkt. 30, at 9-10), but there is no ruling yet that a taking has occurred for which the Constitution requires payment. Such a ruling is the only way to ensure that the people who have a constitutional right to be paid are in fact paid. A ruling on the taking claims would "serve a useful purpose in clarifying the legal relations at issue." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011).

Because the present case is a live dispute about the State's obligation to pay compensation, a duty which has not disappeared by the expiration of the proclamations, this appeal is not moot.

## B. Declaratory relief is appropriate to determine whether government has caused a taking of property.

The District Court concluded that it cannot issue declaratory relief that a taking occurred because a declaration is not a permissible remedy under the Fifth or Fourteenth Amendments. Dkt. 60, at 25-36. As further addressed below, declaratory relief as to whether a taking occurred is an appropriate judicial remedy.

The District Court explained that "equitable remedies" are not available when a claim is made that property is taken. Dkt. 60, at 25. But the District Court's decision ignores the distinction between injunctive and declaratory relief; both are types of equitable remedies.

Appellants agree that they could not get injunctive relief prohibiting the continued effect of the proclamations under the Fifth Amendment for the simple reason that the taking of property is not unconstitutional —there is nothing to enjoin. The Fifth Amendment does not prohibit the taking of property; it simply requires (eventual) payment of just compensation. *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2175 (2019). Even though the ultimate remedy is compensation, there remains a controversy resolvable by declaratory relief that would be

13

useful to the parties: a determination of whether payment of just compensation is even required.

> 1. **In confusing different forms of equitable relief, the District Court erroneously concluded that declaratory relief was also not available for a Fifth Amendment taking claim simply because injunctive relief was not available.**

In concluding that declaratory relief was not available for a taking claim, the District Court mistakenly assumed that declaratory relief was not available because injunctive relief typically is not available. The District Court specifically concludes that declaratory relief would be "the functional equivalent of an injunction against enforcement of the moratorium." Dkt. 60, at 25 (citing *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 391 (D. Mass. 2020); *County of Butler of Cty. of Butler v. Wolf*, No. 2:20-CV-677, 2020 WL 2769105, at *4 (W.D. Pa. May 28, 2020); *HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337, 358 & n.112 (E.D. Pa. 2020)).

There is simply no analysis as to how declaring that a government action causes a taking is the equivalent of an injunction. These three district court cases completely ignore the distinctions between declaratory and injunctive relief. There may be unique reasons

14

declaratory relief was not granted in these cases based on the relief sought or the argument and authorities presented to the courts in those cases, but the conclusion that declaratory relief is tantamount to an injunction has no support in the law.

Only in rare cases is declaratory relief not allowed as an end run around federal law prohibiting the exercise of federal courts authority, such as the Tax Injunction Act, *see Big Sandy Rancheria Enterprises v. Bonta*, 1 F.4th 710, 720 (9th Cir. 2021), *cert. denied,* 142 S. Ct. 1110 (2022), or the lack of waiver of sovereign immunity. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997). Here, there is no Congressional action precluding federal court jurisdiction.

Rather, declaratory and injunctive relief are very different. Declaratory relief simply declares the legal implications of the circumstances pled, *i.e,* whether the situation amounted to a taking of property that would require eventual payment of just compensation. Injunctive relief, by contrast, would prohibit the State's action. *See Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir. 1987) (explaining differences). Appellants no longer seek injunctive relief under their Fifth Amendment taking claim.

15

Even when ignoring the distinctions between declaratory and injunctive relief, the authorities the District Court cites are not persuasive—they all rely on one case that provides no explanation for its conclusion. *Baptiste* merely cites *Wolf* for the notion that declaratory relief would be the functional equivalent of an injunction, with no other analysis whatsoever. *Baptiste*, 490 F. Supp. 3d at 391 (citing *Wolf,* 2020 WL 2769104, \*4). Like *Baptiste, HAPCO* relies on nothing other than the conclusion in *Wolf* that declaratory relief is equivalent to injunctive relief. *Wolf* merely asserts that declaratory relief is the functional equivalent of an injunction without any analysis. *Id.* The District Court here has simply followed suit without any analysis of its own regarding the significant differences between declaratory and injunctive relief.

The District Court also relied on *Knick*, 139 S. Ct. 2162, for the proposition that an injunction to stop a taking is inappropriate. "Given the availability of post-taking compensation, <u>barring the government from acting</u> will ordinarily not be appropriate." *Knick*, 139 S. Ct. at 2177 (emphasis added). But as addressed above, barring government action is nothing like declaring its legal implications.

16

In the present case, a declaration that a taking occurred is nothing like an injunction. A declaration here that the State may continue what it is doing so long as it eventually pays just compensation is not the functional equivalent of an injunction because it would enjoin no action. Quite the opposite, in fact.

### 2. The Supreme Court has repeatedly recognized that declaratory relief that a taking did or did not occur is appropriate.

The Supreme Court has recognized on numerous occasions that declaratory relief, without regard to injunctive relief, is appropriate for determining whether a compensable taking occurred. The most recent is *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2070 (2021). There, the Court considers a declaratory relief claim and ultimately rules that the state law caused a taking of property without any suggestion that *Knick,* or any other case, prohibits declaratory relief claims. In fact, the dissent complained that the property owner in *Cedar Point Nursery* was not seeking compensation (*id.* at 2081, 2089 (Breyer, J., dissenting), but that was no obstacle to the majority ruling that a taking occurred. The declaratory relief sought by Appellants is like that in *Cedar Point Nursery*.

*Cedar Park Nursery* is not alone. In *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984), the Court issued declaratory relief on the existence of a taking without an accompanying claim for the court to award compensation. *Id.* at 1006, 1013 (declaring a taking of trade secret data did not occur in one time period but would occur for another time period). *See also Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 71 (1978) n. 15 (1978); *E. Enterprises v. Apfel*, 524 U.S. 498, 521–22 (1998),

As in *Cedar Point Nursery* and others, Appellants here seek a declaration that a taking of their property has already occurred so that, if they are entitled to compensation, they can obtain it from the State because the State is likely to honor this Court's declaration. Without a declaration that a taking has occurred, the State has no obligation—or incentive—to pay anything.

The appeal is not moot because Appellants are entitled to a declaration as to whether the State has taken their property interests.

## III.     Voluntary cessation of the challenged conduct does not moot the case.

In addition to the continuing need for knowing whether Appellants are entitled to just compensation, the law does not support finding

mootness because of the defendant's voluntary cessation of the

challenged conduct. A defendant cannot automatically moot a case

simply by ending his unlawful conduct once sued. "It is well settled that

a defendant's voluntary cessation of a challenged practice does not

deprive a federal court of its power to determine the legality of the

practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,

528 U.S. 167, 189 (2000) (citing *City of Mesquite v. Aladdin's Castle,*

*Inc.*, 455 U.S. 283, 289 (1982)).

The burden of escaping a ruling on the merits is particularly heavy

when mootness is claimed by the voluntary ending of defendant's

conduct:

> "'a defendant claiming that its voluntary compliance moots a
> case bears the <u>formidable burden</u> of showing that it is
> <u>absolutely clear</u> the allegedly wrongful behavior could not
> reasonably be expected to recur.'"

*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Friends of*

*the Earth, Inc.*, 528 U.S. at 190 (emphasis added))

In several cases challenging emergency COVID-19 rules, the

Supreme Court has recognized that the challenges to pandemic-related

emergency regulations were not moot. *See Tandon v. Newsom*, 141 S.

Ct. 1294 (2021) (per curiam) ("even if the government withdraws or

19

modifies a COVID restriction in the course of litigation, that does not necessarily moot the case"); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68–69 (2020) (challenge to changing restrictions on assembly held not moot). The constantly fluctuating circumstances regarding this pandemic call for resolution of legal issues that would otherwise remain unsettled.

In *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019), this Court found mootness in a case challenging a statute that had been repealed by the legislature. But the repeal happened after a judicial ruling that the statute was preempted. *Id.* at 1197. In declaring the appeal moot, this Court relied on an expectation that the legislative body was acting in good faith and was not going to reenact a statute which a court previously found to be illegal. *Id.* at 1199.[1] That rationale does not apply here because there is no ruling that the proclamations are illegal and, therefore, no basis for characterizing a revived proclamation as being in bad faith.[2]

---

[1] Expiration of government action in *Trump v. Hawaii*, 138 S. Ct. 377 (2017), *cited in* Motion to Dismiss, at 15, similarly followed Court rulings of illegality.

[2] *Chambers* does not address a relatively recent Supreme Court decision in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012,

While E2SSB 5160 purported to end the eviction moratorium (and not other challenged portions of the proclamations), the Governor chose to extend the eviction moratorium for several months *after* the date the legislature directed the moratorium to end. The situation may be different had the legislature repealed the statute on which the Governor claimed he had the independent authority to suspend landlord/tenant statutes. *See, e.g., Cty. of Butler v. Governor of Pennsylvania*, 8 F.4th 226, 229 (3d Cir. 2021), *cert. denied sub nom. Butler Cty., Pennsylvania v. Wolf*, 142 S. Ct. 772 (2022). But that was not done.

The State also argues that the Governor has not been moving the goalposts by reissuing similar proclamations. Motion to Dismiss, at 16. His consistency simply reinforces that, if COVID-19 cases increase, he is likely to reissue a similar proclamation.

After *Chambers*, this Court addressed these principles in *MetroPCS California, LLC v. Picker*, 970 F.3d 1106 (9th Cir. 2020). The challenged state law in *Picker* expired, but this Court recognized that the case challenging its legality was not moot because the plaintiff still needed to

---

2019 n.1 (2017). The Court retains the rule that a government official must still satisfy a "heavy burden" that it was "absolutely clear that the allegedly wrongful behavior could not reasonably be expect to recur." *Id.*

know the answer to the legal questions due to lingering impacts of the expired law. *Id.* at 1116. The lingering impacts were the potential for prosecution for violation of the now expired law. Here, the lingering impact is the ongoing, unremedied loss caused by the taking of Appellants' property interests. *Id. Picker* recognizes that these impacts "need not be certain" but only a "possibility." *Id.* In the present case, the damage to Appellants is more than a possibility; the damage occurred. Appellants continue to be affected by the fact that tenants did not pay rent and recovered security deposits without coming current on rent when they left the tenancy.

Additionally, due to the uncertainties surrounding COVID-19, there is a possibility that another eviction moratorium may occur in the future. Other courts have recognized the uncertain future caused by the pandemic should not moot pandemic-related cases. For instance, a District Court in California concluded:

> The Defendants are not constrained from enacting or re-enacting restrictions on plaintiffs and their businesses. Because the current shutdown orders demonstrate that the allegedly wrongful behavior can reasonably be expected to

re-occur as health conditions wax and wane, the exception to mootness applies.

*Bols v. Newsom*, 515 F. Supp. 3d 1120, 1126 (S.D. Cal. 2021), *reconsideration denied sub nom. JD Bols v. Newsom*, No. 20-CV-873-BEN (BLM), 2021 WL 1313545 (S.D. Cal. Apr. 8, 2021).

The waxing and waning continues. Only a month ago, the Washington Department of Health warned: 'While the virus remains with us and is expected to circulate for the foreseeable future, … [it] will take years to recover. …[i]t is difficult to predict when the pandemic will truly end." https://doh.wa.gov/sites/default/files/2022-03/WAForward.pdf.

Given the uncertain nature of COVID-19 and its variants, the lack of anything to constrain the Governor from re-issuing proclamations on eviction and the extent to which the Attorney General defends the proclamations, the appeal should not be dismissed on mootness grounds. Moreover, the Attorney General has not promised to never enforce a proclamation like the ones at issue. Nor could he.

**IV.     The Court should decide this appeal because the issues are capable of repetition and evading review.**

As an independent ground for not dismissing this appeal, this Court should decide this appeal because the dispute is one that is capable of repetition, but potentially evading review.

> A dispute qualifies for that exception only "if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again."

*United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018) (quoting *Turner v. Rogers*, 564 U.S. 431, 439–440 (2011)). It is reasonable to expect that Appellants will be subjected to the same action again because the pandemic is not over, there is no ruling as to the legal impacts of the proclamations and the Governor even issued his "Bridge Proclamation" which continued the eviction moratorium after the legislature declared it would end. *See supra* at 4. *See Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 345 (7th Cir. 2020), *cert. denied,* 141 S. Ct. 1753 (2021) (challenge to pandemic-related executive order restricting church attendance was not moot because it was not

"absolutely clear" the challenged executive order would "never be restored.").[3]

The proclamations are capable of repetition given that they were issued in emergency circumstances and "the only certainty about the future course of this pandemic is uncertainty." *Hopkins Hawley LLC v. Cuomo*, No. 20-CV-10932 (PAC), 2021 WL 1894277 (S.D.N.Y. May 11, 2021) (citing *Cassell v. Snyders*, 990 F.3d 539, 546 (7th Cir. 2021) ("We have considered whether the case should be dismissed as moot. Given the uncertainty about the future course of the pandemic, we are not convinced that these developments have definitively rendered it moot.")).

Given the proclamations only lasted a few months at a time, their legality would constantly evade appellate review.

> The duration component of the repetition/evasion analysis is present where "the underlying action is almost certain to

---

[3] *See Amato v. Elicker*, 534 F. Supp. 3d 196 (D. Conn. 2021) (Governor could not "say with certainty that it will never be necessary to re-impose restrictions in the future"); *Jones v. Cuomo*, 542 F. Supp. 3d 207, 214–16 (S.D.N.Y. 2021) (addressing multiple COVID-19 cases).
.

> run its course before either this court or the Supreme Court can give the case full consideration."

*Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1173 (9th Cir. 2002) (quoting *Alaska Ctr. For Env't v. U.S. Forest Serv.*, 189 F.3d 851, 855 (9th Cir. 1999); *see also Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1019 (9th Cir. 2010) (three years was not enough time for judicial review)).

Due to the uncertainty with global health, the high burden of proving a proclamation will never recur, and the time it takes for an appellate ruling on these issues, this appeal should not be dismissed on mootness grounds because the issues are capable of repetition, yet evading review—a traditional standard for retaining review.

## V. Appellants' impairment of contracts clause claim is not moot.

Although the State's motion did not address mootness on a claim-by-claim basis, Appellant's impairment of contracts clause claim is not moot either. In a nutshell, the Contracts Clause is violated when there is a substantial impairment of contractual obligations and the impairment is not narrowly tailored or subject to reasonable conditions.

*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 242 (1978); *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 22 (1977).

Appellants contend that the impairment was substantial and their inability to enforce their contracts during the proclamations has continuing effects. Additionally, the impairment was not narrowly tailored or subject to reasonable conditions for several reasons, but one of them is the fact that there was no provision for payment for the losses, or avoiding losses, occasioned by mandating that Appellants continue to keep tenants in their property who can pay, but did not pay rent, or who damaged the rental units. Whether the State can do this is a live dispute. There's no promise to never repeat it and Appellants need to know their rights because the decision here will affect their decision-making regarding continuing in the rental business and the drafting of future rental contracts, if they do continue.

Appellants Contracts Clause claim is not moot.

## Conclusion

Appellants urge the Court not to dismiss their case as moot. They still have rental properties, still have losses from the challenged actions and still need to know whether a taking occurred that could be

compensated or whether their contracts were impaired. The State has not met its burden of proof to have the case dismissed.

Respectfully submitted this 25th day of April, 2022,

> Richard M. Stephens WSBA #21776
> STEPHENS & KLINGE LLP
> 10900 NE 4th Street, Suite 2300
> Bellevue, WA  98004
> (425)-453-6206

## Certificate of Compliance with Type-Volume Limitations in Rule 29(d) and Rule 32(g)(1).

This brief complies with the type-volume limitation of Fed. R. App. P. 29(d) and 32(a)(7)(B) because this brief contains 5200 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in fourteen point Century Schoolbook font.

By:  s/*Richard M. Stephens*

Richard M. Stephens, WSBA # 21776
Attorney for Appellant
Dated April 25, 2022

## Certificate of Service

I hereby certify that a copy of the foregoing Appellant's Response to Motion to Dismiss was served upon counsel for Appellees by electronic filing with the United States Court of Appeals for the Ninth Circuit's CM/ECF system this 25th day of April, 2022, at Woodinville, Washington,

By:  s/*Richard M. Stephens*
      Richard M. Stephens, WSBA #21776
      Attorney for Appellant
      Dated April 25, 2022